## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**UNITED STATES OF AMERICA**                                    **RESPONDENT**

**v.**                                                          **CIVIL NO. 3:05cv784WS**
                                                                **CRIMINAL NO. 3:03cr68WS**


**CURTIS J. HARDY**                                             **PETITIONER/DEFENDANT**

### ORDER

Before this court is the motion of the petitioner Curtis Jerome Hardy filed

pursuant to Title 28 U.S.C. § 2255,[1] in which he seeks to vacate, set aside or modify

his sentence.  The petitioner was convicted, following a jury trial, of bank robbery in

violation of Title 18 U.S.C. § 2113(a) & (d)[2] and was sentenced to 300 months

imprisonment.  The petitioner also was convicted of illegal use of a firearm in the

---

[1]Title 28 U.S.C. § 2255 provides in pertinent part that, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

[2]Title 18 U.S.C. § 2113 (a) & (d) provide that, "(a) [w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association;  or [w]hoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny – [s]hall be fined under this title or imprisoned not more than twenty years, or both.

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than **twenty-five years**, or both.

commission of bank robbery and was sentenced to 84 months imprisonment under Title 18 U.S.C. § 924(c)(1)(A)(ii).[3]  The petitioner's total sentence was 384 months imprisonment (32 years).  The conviction and sentence were affirmed by the United States Court of Appeals for the Fifth Circuit in an unpublished opinion, No. 03-60926, on June 22, 2004.  Thereafter, the United States Supreme Court denied certiorari on January 28, 2005.  *Hardy v. United States*, 543 U.S. 1072, 125 S.Ct. 918, 160 L.Ed.2d 809 (2005).  Petitioner filed the instant § 2255 motion on December 27, 2005. Therefore, his motion is timely.  The petitioner has filed three memoranda in support of his § 2255 motion, two of which raise issues for the first time over one year after the petitioner's conviction and sentence had been affirmed.  Additionally, these memoranda raise issues which were not presented on direct appeal.

On direct appeal, the petitioner argued that his conviction and sentence should be reversed because his trial counsel had failed to argue that the petitioner was right-handed, whereas, according to the petitioner, the evidence indicated that the bank robber was left-handed. Finding the record insufficiently developed to allow evaluation of this claim, the Fifth Circuit declined to address it, noting that the

---

[3]Title 18 U.S.C. § 924(c)(1)(A)(ii) provides in relevant part that, "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime – (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than **7 years**; ... ."

petitioner could bring any ineffective assistance of counsel claims in a collateral proceeding under Title 28 U.S.C. § 2255.

Next, the Fifth Circuit disagreed with the petitioner's contention that this court had erred by denying his motion to suppress the evidence found in his girlfriend's apartment at the time of his arrest.  The petitioner's appellate brief was directed solely to this court's conclusion that the petitioner's girlfriend, Cherries Young Odie, voluntarily had consented to the search.  According to the petitioner, the search was invalid because it resulted from an illegal arrest and because Odie was not advised that she could decline to give her consent.  The Fifth Circuit commented that even if this court had erred in concluding that Odie voluntarily had consented to the search, the petitioner had abandoned this argument since he had failed to raise any argument in his appellate brief challenging the district court's alternative ruling that exigent circumstances justified the search.  Thus, the Fifth Circuit affirmed the petitioner's conviction and his sentence, and petitioner now seeks habeas corpus relief under §2255.

## FACTUAL BACKGROUND

The Interstate 55 branch of the Union Planters Bank in Jackson, Mississippi, was robbed shortly before 9:39 A.M. on April 4, 2003.  A witness outside the bank observed a man  wearing all white entering the bank and then running out of the bank a few seconds later.  The witness also observed this man leaving hurriedly in a maroon colored General Motors car.  Bank tellers testified that the robber had worn clothing "similar to what painters wear," including white pants, a dust mask over his face, and gloves.  The tellers also observed that the robber had carried a colored bag

3

in his right hand, in which he placed the stolen money.  The tellers noticed that the robber had held a black and gold pistol in his left hand.  According to the bank's surveillance cameras, the robber left the bank at 9:39 A.M.

Unbeknown to the robber, a bank teller had given the robber a packet of money containing a transmitting device which was activated when it was removed from the teller's drawer.  A Jackson police officer began receiving a signal from the Union Planter's transmitter within a minute after the robbery was reported.  Upon tracking the transmitter signal, the officer arrived at the Willow Point Apartments located at 751 Glencross Road in Jackson, Mississippi, not far from the Interstate 55 bank branch. The officer was joined by other officers who also had tracked the transmitter signal to the same location.  Employing triangulation, the officers determined that the signal was coming from one of two apartments in building 22.  They secured the building and alerted the apartment manager.  The apartment manager then contacted the tenant in the upper level  apartment and received the tenant's permission for the officers to search it.  After searching this upper apartment and failing to locate the transmitter, the officers quickly concluded that they had the wrong apartment.  The officers then deduced that the transmitter had to be in the lower apartment.

Proceeding to the lower apartment, number 275, officers found a white cap, a white face mask, and a white shirt with its buttons ripped off just outside the door. Someone, they surmised, had partially undressed outside apartment number 275 in a great hurry.

Cherries Y. Odie was the tenant who lived in apartment 275.  The petitioner lived there with her.  According to cell phone records presented at trial, someone had

4

called Odie at work at approximately 9:45 A.M. on the date of the robbery.  This time would be approximately six minutes after the bank robbery.

Odie testified that the petitioner had called her at work and had told her that "someone said that he had done robbed a bank."  The petitioner also told her during the telephone conversation that he heard sirens and saw people, whom Odie assumed were police officers, outside the apartment.  Alarmed, Odie said she had left work immediately and returned to the apartment complex.

Once Odie arrived at the apartment complex she saw police helicopters and police officers around building 22.  She identified herself to the police, gave them the key to her apartment, and signed a Consent To Search Form.  As the officers entered the apartment, they called out loudly for anyone inside to come out.  No one responded.  The officers then conducted a cursory search without finding anyone.

As one officer followed the transmitting signal around the apartment, he was led to a water heater closet.  Inside a bedroom, another officer noticed a pair of white pants lying beside the bed with one leg pulled inside out like the pants had been taken off in a hurry.  Another officer inside the bedroom noticed movement inside a closet. The officer proceeded to search the closet and found the petitioner hiding there, wearing only his underwear.

The petitioner immediately was handcuffed and placed on a couch while the officers continued their search for the transmitter.  The search centered on the water heater closet.  The officers observed that the petitioner became agitated once the officers focused on the water heater closet, and that the petitioner had tried to distract the officers by twice demanding water to drink.  The officers then found the transmitter

behind the water heater.  They additionally discovered a pillowcase containing $7,540.00.

The searching officers also found a maroon Buick.  Since the robber had been seen leaving the Union Planters Bank in a maroon General Motors automobile, the officers searched the Buick and found a black and gold pistol.  The witness who had seen a man enter and then leave the bank, and the bank tellers on duty at the time of the robbery, all stated that the Buick and the pistol resembled the automobile and pistol used by the robber.  The bank tellers also identified the pillowcase recovered from the water heater closet as resembling the one held by the robber.

Cherries Y. Odie provided information on the maroon Buick, telling officers that it belonged to the petitioner's aunt.  Odie stated that petitioner's aunt had allowed him to use the Buick.  Odie also identified the black and gold pistol as her personal weapon which she kept in her apartment.

The bank's security cameras did not clearly depict the robber's face because of the mask he wore;  so, none of the bank tellers at trial could positively identify the petitioner as having been the robber.  Two of the bank tellers were able to testify that the petitioner was the same height and weight as the robber.

The petitioner's only witness at trial was Odie.  She testified that she had "had no problem cooperating with the police in allowing them to search [her] apartment" and that she had been "very cooperative with them."  Odie explained that she had been  concerned for the safety of the petitioner inside the apartment and she had not wanted  problems with her landlord.

6

Ms. Odie also testified that she had seen the defendant on the morning in question talking with his cousin Debroski Rushing.  Odie testified that Rushing was the approximate height of the defendant and that the maroon Buick owned by Rushing's mother occasionally was driven by Rushing, as well as by the petitioner.  Odie testified that she had seen Rushing at the apartment complex about fifteen minutes after she had returned there the morning of the robbery and that he had appeared "nervous and paranoid."  Rushing, she continued, had come to see her the afternoon of the robbery after the police had arrested the petitioner, and that he had a set of keys to the maroon car at that time.  According to Odie, Rushing had asked if he could search her apartment for money, saying that he knew money was still there.  Odie stated that she had not wanted anything to do with Rushing;  so, she had escorted him to her door.  The petitioner and the government stipulated that the amount of money stolen from Union Planters Bank was $8,752.25.  The petitioner rested without offering any other evidence.

In rebuttal, the government called Shateeka Clincy as a witness.  Clincy was a tenant at the Willow Point Apartments at the time of the robbery.  Clincy said she knew Debroski Rushing because she was dating a friend of his.  Rushing, she testified, had come to her apartment the morning of the robbery and had been with her throughout the time the bank was robbed.  She also testified that Rushing had been nervous when the police had arrived to search at the apartments, and that he had appeared to know something about what was happening.  Clincy, however, was positive that Debroski Rushing had been with her at her apartment at the time of the robbery.

7

During his closing summation at trial, the petitioner's counsel suggested that Debroski Rushing had been the actual robber, that he had planted clothes outside of apartment 275, and that he had hidden the money inside the apartment to lead the police to the petitioner.  No keys to the maroon Buick were found, emphasized defense counsel, and that approximately $1,000.00 still was missing from the stolen money.

The United States responded in closing that, even if Debroski Rushing had known about the robbery beforehand, he clearly could not have been the robber since he had been at Clincy's apartment during the robbery.  All of the evidence pointed directly to the petitioner as the perpetrator, argued the United States.  As far as the missing money, it simply could have fallen out of the pillowcase after the robbery, theorized the United States.

### THE MOTION FOR HABEAS CORPUS RELIEF UNDER § 2255

The petitioner submits his petition/motion to vacate his conviction and sentence, asserting fourteen issues for this court's consideration, most of them relating to claims of ineffective assistance of counsel.  This document also contains the petitioner's legal arguments with authorities and his supporting exhibits, all timely filed on December 27, 2005.

The petitioner also asserts in his original petition/motion that the United States failed to disclose critical evidence, that this court improperly denied the petitioner an evidentiary hearing, that the petitioner's consecutive sentences constitute double jeopardy, and that the petitioner suffered cumulative prejudice from the court's errors and counsel's performance.

8

On February 28, 2006, petitioner filed his first memorandum seeking to supplement his original petition/motion.  Therein he argued that this court:  (1), had abused its discretion when it had allowed the government to present a rebuttal witness;  (2), that the government prosecutor improperly had "vouched" for his witnesses during closing argument;  (3), that the trial court improperly had excluded evidence that another individual, one Debroski Rushing, had been the bank robber;  (4), that the evidence was insufficient to support the conviction;  and (5), that an evidentiary hearing should be conducted.

Following the petitioner's first memorandum seeking to supplement his original petition/motion, the petitioner filed a second memorandum on April 18, 2006, again seeking to supplement.  This memorandum contends that the United States had suppressed exculpatory evidence when it had failed to produce the criminal history of the petitioner's cousin, Debroski Rushing, to the petitioner prior to trial.

The petitioner filed on May 31, 2006, his  third memorandum seeking to supplement, and urges this court to consider all of his aforementioned claims as structural errors not susceptible to a harmless error review.

The United States has responded to each of the petitioner's assertions, arguing each is without merit and that no basis exists for this court to grant habeas corpus relief in this case.   The defendant's conviction and sentence  became final on January 28, 2005, the date the United States Supreme Court denied his petition for certiorari, adds the United States.  Therefore, says the United States, some of the new issues presented on February 28, 2006, and on April 18, 2006, pursuant to the petitioner's efforts to supplement his original petition/motion under § 2255, should be denied as

9

procedurally barred because they were filed more than one year after the defendant's conviction became final and because no relation back[4] provision applies to the issues presented in the petitioner's original petition/motion.  The United States also argues that the first four issues presented in the first memorandum are now waived because they were not presented on direct appeal.

Finally, relative to petitioner's third memorandum filed May 31, 2006, the United States argues that none of the grounds urged by the petitioner constitutes structural error such as denial of counsel at trial.  The United States refers to the petitioner's various grounds for relief as "garden variety" assertions of trial error and contends that they are subject to the harmless error analysis.

## ANALYSIS

As mentioned previously, the petitioner filed three separate memoranda seeking to supplement his petition/motion to vacate or set aside his conviction and sentence.  These memoranda were filed on February 28, 2006;  on April 18, 2006; and May 31, 2006, respectively.  The petition for relief under § 2255 had been filed since December 27, 2005, well over one year prior to these three memoranda.  The United States raises the procedural bar to some of these issues because they were submitted over one year after the petitioner's conviction and sentence became final and because, says the United States, they do not relate back to previously filed

---

[4]Rule 15(c) of the Federal Rules of Civil Procedure, which applies to § 2255 proceedings, provides in pertinent part that, "[a]n amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

issues.  The United States also raises waiver with regard to other issues and also argues, alternatively, that these issues have no merit.

## A.  The Relation-Back Doctrine

Rule 15(c) of the Federal Rules of Civil Procedure, which applies to § 2255 proceedings, see *United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002), provides in pertinent part that "[a]n amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  A district court, in its discretion, may permit an amendment which clarifies or amplifies a claim or theory in a timely-filed § 2255 petition after the AEDPA's one year statute of limitations has expired."  *United States v. Thomas*, 221 F.3d 430, 433-434 (3rd Cir. 2000).  However, as noted by the United States, an amendment under Rule 15(c) should not be allowed where the movant seeks to add an entirely new claim or new theory of relief.  *Id.*

The first memorandum filed by the petitioner on February 28, 2006, says the United States, raises two new claims or theories which do not relate back to the claims contained in the petitioner's original petition/motion, namely:  number (2), that the prosecutor improperly vouched for the witnesses during closing argument;  and number (4), that the evidence was insufficient to support the defendant's conviction. The United States submits that these issues now are procedurally barred.  *See*

11

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Title 28 U.S.C. §2244(d)(1);[5] and Rule 15(c) of the Federal Rules of Civil Procedure.

In *Mayle v. Felix*, 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005), the United States Supreme Court analyzed the relationship between relation-back under Rule 15 of the Federal Rules of Civil Procedure and the one-year time limit of the habeas rules.  Rule 15(c)(2) states that an amended pleading relates back to the date of an earlier timely pleading if the amended and earlier pleading arises out of the same "conduct, transaction, or occurrence."  The Supreme Court held that the claims in an amended habeas petition will relate back to the original filing "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes."  *Mayle*, 125 S.Ct. at 2570.  In *Mayle*, the Court held that challenges to the petitioner's pretrial statements raised in an amended

---

[5]Title 28 U.S.C. § 2244(d)(1) provides that, "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

petition did not relate back to the earlier petition, which challenged a witness's statements in a police interrogation that had occurred in a different time and place. The Court held that because the claims arose from different conduct, the amended claim did not relate back to the earlier petition and was not timely filed.

In *United States v. Saenz*, 282 F.3d 354 (5th Cir. 2002), the defendant filed a timely § 2255 petition asserting that his lawyer never had communicated sufficiently with him or had passed along any plea offer to him. *Id.*, at 355. The defendant requested leave to supplement his petition after the one year statute of limitations for filing a § 2255 had expired. The government conceded that the amended claim was also based on the defense counsel's failure to communicate a plea offer to the defendant and, thus, related back to the original § 2255. *Id.*, at 356. The district court denied the supplement as untimely without considering whether it related back to the original claim. Consequently, the Fifth Circuit reversed the district court's decision, holding that a district court must consider whether the proposed claims in the supplemental petition relate back to the original claim. *Id.*

The United States contends that every other Circuit to consider the issue has held that where the proposed amendment or supplement to a timely filed § 2255 petition is requested after the one-year statute of limitations has expired is not allowed unless the amendment relates back to previously-filed issues. *United States v. Hicks*, 283 F.3d 380, 388-89 (D.C. Cir. 2002); *United States v. Thomas*, 211 F.3d 430, 436 (3d Cir. 2000); *United States v. Pittman*, 209 F.3d 314, 318 (4 Cir. 2000); *United States v. Rodriguez*, 286 F.3d 972, 981 (7th Cir. 2002); *United States v. Craycraft*,

167 F.3d 451, 457 (8 Cir. 1999);  *United States v. Espinoza-Saenz*, 235 F.3d 501, 505

(10 Cir. 2000);  *Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000).

Citing the *Hicks* decision from the D.C. Circuit, the United States argues that

the term "relation back" refers to the fact that the issues arise from the same facts and

legal principles, not that the claims arose from the same criminal prosecution.  The

*Hicks* Court noted as follows:

> Although Rule 15(c) could be read to mean that the relevant
> "occurrence" is the claimant's trial and sentencing, this
> interpretation has been resisted, and with good reason. In
> most cases, a prisoner's claims for collateral relief will arise
> out of the same criminal conviction; therefore, if the
> defendant's trial and sentencing are construed to be the
> "occurrence," virtually any purported amendment will relate
> back. Such a result would be difficult to square with
> Congress' decision to expedite collateral attacks by placing
> stringent time restrictions on § 2255 motions. . . . Therefore,
> like our sister circuits, we agree that Rule 15(c) does not
> apply where the prisoner's proposed amendment makes
> claims or is based on occurrences "totally separate and
> distinct, 'in both time and type' from those raised in his
> original motion." 283 F.3d at 388 (citations omitted). *See also
> Espinoza-Saenz*, 235 F.3d at 505; *Pittman*, 209 F.3d at 318.

Based on this observation from the *Hicks* decision, the United States submits

that the present claims relating to improper closing argument and insufficiency of the

evidence (issues 2 and 4) do not relate to any of the fourteen claims timely filed in the

defendant's initial § 2255 motion.  Hence, says the United States, these issues should

be denied as procedurally barred.

Additionally, argues the United States, the same disposition should be

accorded to the lone issue raised in the petitioner's second memorandum seeking to

supplement, that the United States suppressed crucial evidence when it did not

14

present the petitioner with Debroski Rushing's criminal record.  This is a new issue, says the United States, and is procedurally barred since it does not relate back to any issue raised in the petitioner's original petition/motion for relief under § 2255.

The United States also argues that the issue of suppressed crucial evidence has no merit because the United States did not call Debroski Rushing as a witness.  Thus, says the United States, it had no obligation to produce his criminal record, if any, to the petitioner.  The United States adds that it had the statement given by Debroski Rushing to law enforcement officers on the day in question, and that this statement was provided to the petitioner at trial.

This court agrees with the United States.  The proposed amendments to the petitioner's original petition/motion for relief under § 2255 filed over one year after the petitioner's conviction and sentence became final and which do not relate back to previously filed issues do not escape the AEDPA's one-year time limit.  *Mayle v. Felix*, 125 S.Ct. at 2570.  The petitioner may not amend or supplement his original § 2255 petition/motion with these issues under Rule 15 as he proposes to do.

### B. Procedural Bar For Issues Not Raised On Direct Appeal.

The United States next argues that issues 1 through 4 contained in the first memorandum seeking to supplement are subject to the procedural bar because they were not raised on direct appeal.  Issues which could have been raised on appeal may not be raised in a § 2255 unless the defendant shows cause for failing to raise them and prejudice.  *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992).  A defendant stands "fairly and finally convicted" after exhaustion of or waiver of appeal.  *United States v. Frady*, 456 U.S. 152, 164 (1982).  A defendant may not

15

raise an issue for the first time on collateral review without showing both "cause" for this procedural default, and "actual prejudice" resulting from error, *Id*. at 168, or that he is "actually innocent" of the crime for which he or she is convicted. *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (it is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."); *United States v. Sorrels*, 145 F.3d 744, 749-50 (5th Cir. 1998). "A section 2255 movant who fails to raise a constitutional or jurisdictional issue on direct appeal waives the issue for a collateral attack on his conviction, unless there is cause for the default and prejudice as a result." *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000). "If the defendant does not meet this burden of showing cause and prejudice, he is procedurally barred from attacking his conviction." *Drobny*, 955 F.2d at 994-95.

Certainly, the petitioner cannot demonstrate factual innocence in this case. He also is unable to demonstrate cause for not having submitted these issues on direct appeal. Therefore, issues 1 through 4 presented by the petitioner's first memorandum seeking to supplement his petition/motion under § 2255 are waived.

### C. All Issues Presented by the First Memorandum Seeking To Supplement May Be Denied on Their Merits

1. The United States first submits that this court did not err when it permitted the rebuttal testimony of Shateeka Clincy. This court agrees.

The petitioner introduced the testimony of his girlfriend to establish that Debroski Rushing knew something about the robbery in question in an attempt to manufacture reasonable doubt of the United States' theory of the case. Once this

16

evidence was before the jury, the United States called Clincy in rebuttal to show that Debroski Rushing was at her apartment at the time of the robbery.  So, regardless of any knowledge Debroski Rushing may have had, the United States established that he could not have been the robber.  Petitioner's trial counsel had no basis to object to the presentation of this rebuttal testimony.  The United States will not be faulted for calling the witness on rebuttal since it did not know Clincy would be necessary until it heard the testimony of the petitioner's girlfriend.  *See U.S. v. Ortega-Chavez*, 682 F.2d 1086, 1089 (5th Cir. 1982).  And, since Clincy was a rebuttal witness, the petitioner had no right to advance notice of Clincy's testimony.

2.  On the matter of improperly vouching for the prosecutor's witnesses during closing argument, the petitioner refers to two comments made by the prosecutor to the jury:  (1), he did not believe any of the witnesses had tried to lie to the jury;  and (2), that a witness had no reason to lie to the jury.

"Vouching" has been defined in this Circuit as explicit personal assurances by a prosecutor of a witness's veracity.  *United States v. Heath*, 970 F.2d 1397, 1404-05 (5th Cir. 1992).  In many trials, says the United States, testimony by some defense witnesses may be subject to strong attack for untruthfulness.  Here, however, the United States notes that the prosecutor was attempting to point out that he would make no attack on the truthfulness of any of the testimony.

According to the United States, the prosecutor's first comment merely noted that even the defense witness, Cherries Young Odie, had appeared to tell the truth. The United States argues that even when Odie was testifying for the defendant instead of as a government witness, she did not engage in any obviously untruthful

17

testimony.   The prosecutor's second comment, that Clincy had no reason to lie for Debroski Rushing, says the United States, was simply a fair comment on the evidence.  Clincy testified that she knew Rushing because she was dating a friend of his.  The United States contends that if the petitioner thought that Clincy was actually Debroski Rushing's girlfriend, then he should have cross-examined Clincy on that point.

A criminal defendant bears a substantial burden when attempting to demonstrate that improper prosecutorial comments constitute reversible error.  *United States v. Diaz-Carreon*, 915 F.2d 951, 956 (5th Cir. 1990).  To warrant reversal of a conviction on grounds of improper jury argument, a reviewing court must determine whether a prosecutor' s comments were both "inappropriate and harmful."  *United States v. Campbell*, 49 F.3d 1079, 1084 (5th Cir.), *cert. denied*, 516 U.S. 874, 116 S.Ct. 201, 133 L.Ed.2d 135  (1995).  A prosecutor's improper remarks standing alone, however, are insufficient to overturn a criminal conviction.  *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985).  Rather, the defendant must show that the prosecutor's remarks affected his substantial rights.  *United States v. Simpson,* 901 F.2d 1223, 1227 (5th Cir. 1990), *cert. denied*, 510 U.S. 983 (1993).

In order to determine whether an argument affected a defendant's substantial rights, the court examines "(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence supporting the conviction."  *United States v. Hernandez-Guevara*, 162 F.3d 863, 874 (5th Cir. 1998), *cert. denied*, 526 U.S. 1059, 119 S.Ct. 1375, 143 L.Ed.2d 534 (1999).

18

The magnitude of the prejudicial effect is tested by looking at the prosecutor's remarks in context and attempting to elucidate the intended effect.  *United States v. Wyly*, 193 F.3d 289, 299 (5th Cir. 1999).

In the instant case, this court instructed the jury that the statements and argument of counsel are not evidence.  The prosecutor's remarks do not reveal any intent to cause prejudice to the defendant's case, and the evidence presented at trial clearly established the foundation from which the jury reasonably could infer the defendant's guilt.  So, this court is not persuaded that these comments rose to the level of denying the petitioner any substantial rights.

3.  Next, the petitioner submits that this court improperly excluded evidence that Debroski Rushing was the bank robber;  however, the only evidence offered by the petitioner on this point was excluded as hearsay.  Excluding hearsay is no basis for vacating or setting aside the petitioner's sentence.

4.  The petitioner next says the "evidence was insufficient to support the conviction" argument, attempting to show that because his fingerprints were not recovered from the pistol, the Buick, or the money, and because the robber allegedly was left-handed, rather than right-handed, as is the petitioner, no reasonable jury could have convicted him.  The facts of this case based on the testimony of credible witnesses and other evidence establish that the robber was wearing gloves to prevent any possibility of identifiable fingerprints.  Additionally, the surveillance camera evidence showed that the robber held the pistol in his left hand while taking the money with his right.  Other witnesses saw the same thing.  Whether the robber was left-handed or right-handed was not established by this evidence, and the petitioner

19

offered nothing else more substantial on this point.  Instead, the petitioner sought to present a mere presumption that the robber was left-handed because he would have held the pistol with his right hand.

5.  Finally, in his first memorandum seeking to supplement his original petition/motion, the petitioner contends that he was entitled to an evidentiary hearing to prevent a miscarriage of justice.  The petitioner says he is entitled to this hearing under Rule 8(a) of the Federal Rules of Civil Procedure.

This rule, says the United States, sets forth the requirements for submitting a claim, a counterclaim or other pleading in a civil case, but has nothing to do with evidentiary hearings.  The United States is correct;  however, there is more to the petitioner's argument which must be addressed.

The petitioner bases his request for an evidentiary hearing on the case of *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). In *Keeney*, a case decided four years before AEDPA's enactment, a prisoner with little knowledge of English sought an evidentiary hearing in federal court pursuant to Title 28 U.S.C. § 2254, alleging that his *nolo contendere* plea to a manslaughter charge in state court was not knowing and voluntary because of inaccuracies in the translation of the plea proceedings.  The prisoner did not develop the facts of his claim in state collateral proceedings, an omission caused by the negligence of his state post-conviction counsel.  The United States Supreme Court characterized this as the "prisoner's failure to develop material facts in state court."  *Id.*, at 8, 112 S.Ct. 1715. This failure could be overcome, said the Supreme Court, if the prisoner could show cause and prejudice excusing his default, or if he could "show that a fundamental

20

miscarriage of justice would result from failure to hold a federal evidentiary hearing." *Id.*, at 12, 112 S.Ct. 1715.

After the AEDPA's enactment the United States Supreme Court decided the case of *Williams v. Taylor*, 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). The Supreme Court stated that Title 28 U.S.C. § 2254(e)(2)'s provision, "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings," was very similar to *Keeney* 's language regarding "the state prisoner's failure to develop material facts in state court."  The *Williams* Court explained that in *Keeney* it had borrowed the cause and prejudice standard applied to procedurally defaulted claims, deciding there was no reason "to distinguish between failing to properly assert a federal claim in state court and failing in state court to properly develop such a claim."  *Keeney*, at 8, 112 S.Ct. 1715.  Furthermore, said the *Williams* Court, the similarity between the *Keeney* Court's phrasing and the opening clause of § 2254 (e)(2) shows that Congress intended to preserve at least that aspect of Keeney 's holding: prisoners who are at fault for the deficiency in the state-court record must satisfy a heightened standard to obtain an evidentiary hearing.

Neither the holding in *Keeney,* nor the observations about *Keeney* by the *Williams* Court, apply to the instant case.  The petitioner was tried by a federal court and his habeas petition is based on Title 28 U.S.C. § 2255, not § 2254.  The issue of whether a state court record was properly preserved by a petitioner is not present here.  Therefore, this court agrees with the United States that the petitioner's claim for an evidentiary hearing in the instant case has no merit.

21

### D.  Issues Submitted in Petitioner's Original Petition/Motion Which Do Not Relate Directly to His Ineffective Assistance of Counsel Claims

1.  The petitioner says he moved for a new trial and sought to present to this court allegations of his attorney's ineffectiveness at trial.  The petitioner now claims that this court inexplicably denied his request for an evidentiary hearing on this matter, thereby denying him his constitutional right to due process.  This assertion has no merit.

At his sentencing hearing the petitioner asked this court to consider his motion for a new trial.  This court reviewed the motion and determined that because it was based upon complaints of ineffective assistance of counsel, the proper avenue for raising these claims was in a § 2255 proceeding.  These same assertions now are properly before this court pursuant to the instant § 2255 petition.

This court agrees with the United States that the petitioner was not entitled to an evidentiary hearing on his ineffective assistance of counsel claims at the time he made his request.

The United States cites *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998), which holds that an evidentiary hearing is warranted only if the petitioner produces independent indicia of the likely merit of the allegations.  *Cervantes* addressed a circumstance where the prisoner seeking a hearing was already pursuing a § 2255 petition.  That is not the case here.  The petitioner in the instant case simply was not yet pursuing a § 2255 petition where he could bring his ineffective assistance claims.  *See United States v. Brown*, 591 F.2d 307, 310 (5th Cir. 1979), holding, among other things, that inadequate representation claims have been relegated to

22

later petitions under Title 28 U.S.C. § 2255.  *See also Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), holding that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."

Therefore, the petitioner's assertion that he should have been granted an evidentiary hearing on his ineffective assistance of counsel claims at his sentencing hearing is without merit.

2.  The petitioner claims that imposing a consecutive 84-month sentence for his § 924(c) offense violates the double jeopardy clause.  This court has reviewed the petitioner's arguments and the United State's response and concludes that this claim is without merit.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution[6] protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense. *Monge v. California*, 524 U.S. 721, 727-28, 118 S.Ct. 2246, 2250, 141 L.Ed.2d 615 (1998).  This means that the Double Jeopardy Clause "protects against a second prosecution for the *same offense* after acquittal.  It protects against a second

---

[6]The Fifth Amendment to the Constitution of the United States provides that, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; *nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb*; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation."

prosecution for the *same offense* after conviction.  And, it protects against multiple punishments for the *same offense*."  *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (emphasis added).  The double jeopardy clause is not violated where, as here, the two offenses contain different essential elements.  *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

The petitioner was convicted and sentenced for robbing a bank under Title 18 U.S.C. § 2113(a).  In order to prove a violation of 18 U.S.C. § 2113(a), the government must prove:  (1) an individual or individuals (2) used force and violence or intimidation (3) to take or attempt to take (4) from the person or presence of another (5) money, property, or anything of value (6) belonging to or in the care, custody, control, management, or possession (7) of a bank, credit union, or savings and loan association.  The additional element under § 2113(d), assaulting or putting another's life in jeopardy through use of a dangerous weapon or device, is necessary only if the government seeks a conviction for a violation of § 2113(d).  *See United States v. McCarty*, 36 F.3d 1349, 1357 (5th Cir. 1994).  In the instant case, the United States charged the petitioner under § 2113(a) only.

Next, the petitioner was charged with brandishing a firearm.  The elements of a § 924(c) offense are set out in Fifth Circuit pattern jury instruction 2.48:  "First, that the defendant committed [in this case a crime of violence];  and second, that the defendant knowingly [brandished] a firearm during and in relation to [that crime of violence]."  Each statute under which the petitioner was charged in this case contains elements not required by the other: section 2113(a) requires that a bank be robbed and §924(c)(1) (A)(ii) requires that a firearm be "brandished."  Thus, the test set forth

24

in *Blockburger* is not met in the instant case since the two offenses with which the petitioner was charges contain different essential elements, thereby undermining the petitioner's claim of double jeopardy.  *See McCarty*, 36 F.3d at 1357, where the Fifth Circuit specifically rejected a challenge that consecutive punishment under § 2113(a) and (d) and § 924(c)(1) violated the double jeopardy clause. *Id.* at 1361.  In  *United States v. Martinez*, 28 F.3d 444 (5th Cir. 1994), the court explained that § 924(c) requires different elements than the obstruction of commerce by robbery statute and thus multiple prosecutions were not prohibited by the double jeopardy clause.  *Id.* at 446.  Further, the court stated that since Congress intended cumulative punishments when it enacted § 924(c) no double jeopardy violation had occurred.  *Id.*

3.  In connection with his double jeopardy argument, the petitioner also raises the claim that the failure of his indictment to list the amount of loss to the bank violated *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely v. Washington*, , 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Mendoza-Gonzales*, 318 F.3d 663, 673-74 (5th Cir. 2003).

*Apprendi* provides that the Sixth Amendment right to a jury trial requires that the facts supporting sentencing enhancements must be admitted by a defendant or determined by a jury beyond a reasonable doubt.  *Apprendi* also holds that a sentence cannot exceed the statutory maximum for the offense charged in the indictment. The petitioner's sentence of 300 months on the § 2113(a) count did not exceed the 25 year maximum possible punishment under that statute and his 84-month sentence did not exceed the seven years to life available under § 924(c).

Furthermore, in order to prove a violation of 18 U.S.C. § 2113(a), the United States was required to prove: (1) an individual or individuals (2) used force and violence or intimidation (3) to take or attempt to take (4) from the person or presence of another (5) money, property, or anything of value (6) belonging to or in the care, custody, control, management, or possession (7) of a bank, credit union, or savings and loan association. *United States v. McCarty*, 36 F.3d 1349, 1357 (5th Cir. 1994); *United States v. Burton*, 126 F.3d 666, 670 (5th Cir. 1997); *United States v. Baker*, 17 F.3d 94, 96 (5th Cir. 1994); and *United States v. Van*, 814 F.2d 1004, 1005-06 (5th Cir. 1987).

The amount taken is not a required proof under § 2113(a); instead, the United States was required to show only that money, property, or something of value was taken. At trial the proof established that over $8,000.00 was taken from the bank. The amount taken was not a factor at sentencing, and this court applied no enhancement. Therefore, the petitioner is entitled to no relief pursuant to *Apprendi*.

4. The petitioner claims that the government violated its discovery obligations by failing to turn over a pair of white pants the defendant says were seized at his girlfriend's apartment. The United States responds that the pants were not seized, and that they were not introduced into evidence. Therefore, says the United States, the pants were not subject to being disclosed to the defense.

The United States argues that the supervising officer properly was permitted to testify about having seen white pants, with one leg turned inside out, between the bed and the closet where the petitioner was caught hiding. The petitioner's conjecture that they might have belonged to Debroski Rushing or to the petitioner's girlfriend could

26

have been submitted through Cherries Y. Odie when she testified for the defendant. The petitioner chose not to pursue this matter at trial.

This court agrees that no violation of any discovery obligation of the United States occurred in this case. Seemingly, the petitioner never asked for the pants. Nor is there any proof that they were even seized by police officers on the day in question. *Brady v. State of Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), proscribes "the suppression by the prosecution of evidence favorable to an accused." *Id.*, 83 S.Ct. at 1196. Additionally, the petitioner has made no showing that these pants were in any way exculpatory.

### E.  The Petitioner's Structural Error Argument

The petitioner's third memorandum, which seeks to amend his original petition/motion, argues that all the petitioner's claims pertain to structural errors which are not susceptible to a harmless error review, citing *Brecht v. Abramson*, 507 U.S. 619, 629, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). "[U]nder *Brecht* , a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere possibility that it contributed to the verdict." *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir.), *cert. denied*, 519 U.S. 854, 117 S.Ct. 150, 136 L.Ed.2d 96 (1996). Because this assertion does not raise new claims but merely argues that this court should apply a certain analysis to previous timely raised claims, the United States has responded to the issue on its merits.

In *Brecht v. Abrahamson,* the United States Supreme Court declined to apply the harmless-beyond-a-reasonable-doubt standard from *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) to a § 2254 habeas review of a

27

state-court conviction.  Rather, "[r]ecognizing the distinction between direct and collateral review," the Supreme Court adopted the standard announced in *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).  *Brecht*, 507 U.S. at 635, 638, 113 S.Ct. 1710.  Under this *Brecht* harmless-error standard, the relevant question is whether a state court's error "had substantial and injurious effect or influence in determining the jury's verdict."  *Id.* at 637, 113 S.Ct. 1710 (quoting *Kotteakos*, 328 U.S. at 776, 66 S.Ct. 1239).

According to the United States, none of the grounds urged by the petitioner constitutes "structural" error, that is, error which had substantial and injurious effect or influence in determining the jury's verdict.  Even if his lawyers had committed error in the particulars the defendant asserts, says the United States, any such errors did not have a substantial injurious impact on the verdict.  The United States contends that the evidence against the petitioner was overwhelming and justified the verdict rendered.

This court agrees that the petitioner's claims do not constitute assertions of structural error.   "Structural error" is error that "infect[s] the entire trial process," such as a biased trial judge or the denial of counsel to the defendant.  *Burgess v. Dretke*, 350 F.3d 461, 471 (5th Cir. 2003).[7]  The errors raised by the petitioner are trial errors.

---

[7]*Brecht* refers to "denial of counsel" as an example of a structural error, citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), thereby making clear that the Supreme Court was referring to the absolute denial of the Sixth Amendment right to have assistance of counsel at trial.

Trial errors occur "during the presentation of the case to the jury" and are amenable to harmless error analysis because they "may ⋯ be quantitatively assessed in the context of other evidence presented in order to determine whether [the error] was harmless ⋯." *See Arizona v. Fulminante*, 499 U.S. 279, 307-08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).  Therefore, this court turns to the petitioner's timely filed claims of ineffective assistance of counsel.

### F.  The Ineffective Assisistance of Counsel Claims

The federal courts universally recognize two components to an ineffective-assistance of counsel claim:  (1) deficient performance and (2) prejudice.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Under *Strickland*, a petitioner must demonstrate that "'counsel's representation fell below an objective standard of reasonableness,' with reasonableness being judged under professional norms prevailing [at] the time counsel rendered assistance."  *Black v. Collins*, 962 F.2d 394, 401 (5th Cir.1992) (quoting Strickland, 104 S.Ct. at 2064).  To satisfy the prejudice prong, the prejudice must be such "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993) (quoting *Strickland*, 104 S .Ct. at 2064).

This court's review of the performance of petitioner's counsel is "highly deferential," and the court must "indulge a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance."  *U.S. v. Drones*, 218 F.3d 496, 500 (5th Cir. 2000).  Although the temptation to rely on

hindsight is ever-present, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Id.*

In the instant case, the petitioner states eleven grounds on which he asserts that his trial counsel was ineffective.  This court will review each ground separately.

1.  The petitioner first asserts that counsel was ineffective for failing to call the petitioner's cousin Debroski Rushing as a witness in order to prove that it was Rushing who committed the bank robbery.  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir.1981) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978));  see also *Coble v. Dretke*, 444 F.3d 345 (5th Cir. 2006).  In the instant case, based on what the court gleans from the petitioner's brief, petitioner contends that Rushing would have appeared in court if subpoenaed, would have waived his Fifth Amendment rights, and would have confessed to being the bank robber.  No evidence supports any of these assertions.  Taken in even the most favorable light, these contentions are highly speculative.

The petitioner has not demonstrated to the court that his counsel's decision not to call Rushing was:  a) unreasonable, especially given the testimony of Ms. Odie and Ms. Clincy that Rushing may have known about petitioner's plan to rob the bank, or b) prejudicial, given that there is no proof as to what Rushing would have testified.  As such, petitioner's counsel's decision not to subpoena Rushing does not constitute ineffective assistance of counsel.

2.  Next, the petitioner contends that his counsel was ineffective for failing to prove that the robber was left-handed and that the petitioner was right-handed.  The petitioner says his counsel should have introduced evidence that the petitioner is right-handed, emphasizing that the robber depicted on the surveillance camera held his pistol with his left hand.

The problem with this contention is that the proposed defense rested upon an unproven premise:  that the robber actually was left-handed.  The only support for this premise comes from the surveillance camera which showed the robber holding the pistol in his left hand.  The evidence at trial showed that the robber utilized both hands during the robbery.  The robber used his left hand to hold the pistol and his right hand to hold the bag for the money.  The petitioner's argument that a robber would hold a gun with his dominant hand is purely specious.

Moreover, the court does not find that the jury verdict would necessarily have been to acquit the petitioner even if the jury had received evidence that petitioner was right-handed.  The stolen money was tracked within minutes of the robbery to the apartment where the petitioner was found hiding in a closet, having shed the clothes identified by victims on the scene, and with the stolen money hidden nearby.  The vehicle and gun used by the robber were within the petitioner's access.  The petitioner's girlfriend had "fussed" at him that very morning about his not helping out with the finances.  Because the money was tracked to Cherries Odie's apartment so quickly, the robber had little opportunity to have entered the apartment, to have hidden the money, and to have escaped without the petitioner's notice before the police

arrived.  Any escape opportunity a robber may have had disappeared once police officers arrived.  The petitioner was hiding in a closet, and significantly, in his underwear when police found him.

Accordingly, this court concludes that counsel's decision not to put into evidence that the petitioner was right-handed visited no prejudice upon the petitioner, and, thus, petitioner's trial counsel did not provide ineffective assistance.  A failure by a petitioner's counsel to carry through on a promised defense does not entitle the petitioner to relief where the evidence of his guilt was overwhelming and the defense was not likely to have been successful.  *See United States v. Vaquero*, 997 F.2d 78, 92 & n.11, 12 (5th Cir. 1993).

3.   The petitioner claims ineffective assistance because his counsel failed to call bank teller, Shannon Kennedy, to testify.  Petitioner claims that Kennedy described the robber to police as approximately 6' 3" and 160-180 pounds.  The police report admitted into evidence at trial described the robber as 6' 3" and "thin." Regardless of this difference, eye witnesses testified that petitioner matched the general height of the robber.  Because the robber wore a painter's mask, a positive identification could not be made.  Petitioner concedes that the description Kennedy gave the police matches that of the person depicted by the surveillance camera robbing the bank.  To that extent, the testimony would have been cumulative of the video.  Failure to call a witness to present cumulative evidence does not constitute ineffective assistance of counsel.  *See Murray v. Maggio*, *supra*.  Petitioner offers no reason to believe that Kennedy's testimony would have varied from her description to

the police and would have ruled him out as the robber.  Consequently, counsel's decision not to call Kennedy to testify about the robber's description does not constitute ineffective assistance.

4.  The petitioner next asserts that his counsel rendered ineffective assistance because he failed to prepare for and challenge the testimony of two government witnesses, Officers Melvin Williams and Mike Childress.  Petitioner claims that his counsel only became aware of these two witnesses after trial began and that he did not object to their testimony or move for a continuance.

Officer Melvin Williams testified that he found a maroon car matching the description of the bank robbery getaway vehicle in the back of the apartment complex where the petitioner was hiding.  Upon looking inside the car, Williams said he found a pistol.   The petitioner's girlfriend, Cherries Odie, identified the maroon car, a Buick, stating that the car belonged to the petitioner's aunt.  Odie also stated that the petitioner regularly used the vehicle.  Odie also identified the pistol recovered from the car as her personal weapon which she kept in her apartment.

Officer Mike Childress helped locate the petitioner and the stolen money in Odie's apartment.  He also testified about the white clothing discarded in front of Odie's apartment, photographs of which were introduced into evidence.

The petitioner does not explain what additional cross-examination could have undermined this testimony if his counsel had asked for and been given more time to prepare.  This court cannot simply conclude that there is a reasonable probability that

if counsel had cross examined the officers, then the jury would have acquitted the petitioner.

Furthermore, in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the United States Supreme Court held that a defendant is constructively denied counsel only when his attorney "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.*, at 659. The *Cronic* standard does not apply when defense counsel has merely failed to oppose the prosecution at specific points of the proceedings. It applies only when counsel has entirely failed to challenge the prosecution's case. *Bell v. Cone*, 535 U.S. 685, 697, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). That is not the case here.

This court finds no basis for granting habeas relief based on the petitioner's assertion that counsel should have better prepared for the testimony of officers Williams and Childress.

5. The petitioner next asserts that his counsel was ineffective for failing to object to the testimony of Shateeka Clincy. The question is whether counsel's failure to object to this witness fell below the standard of reasonableness set forth in *Strickland*. The United States cites *U.S. v. Ortega-Chavez*, 682 F.2d 1086, 1089 (5th Cir. 1982), for the proposition that since Clincy was a rebuttal witness, the petitioner had no right to advance notice of Clincy's testimony. *Ortega-Chavez* involved rebuttal witnesses who were present in court and permitted to testify in rebuttal, notwithstanding a sequestration order under Rule 615 of the Federal Rules of Evidence (which provides in pertinent part that, "[a]t the request of a party the court shall order

34

witnesses excluded so that they cannot hear the testimony of other witnesses" ... ). Among the other things stated by the Fifth Circuit in this case, it noted that the government had no way of knowing that these rebuttal witnesses would be necessary until it heard the testimony of the defendant's witness. *Id.*, at 1090.

In the instant case, the petitioner offered the testimony of his girlfriend, Cherries Odie, that Debroski Rushing appeared to know something about the robbery and might possibly be the robber. Until Odie's testimony was presented, the United States had no need to call a rebuttal witness. Clincy was called to rebut any possibility that Debroski Rushing possibly had been the robber. Clincy testified that she was with Rushing in her apartment during the time the bank was being robbed.

Additionally, long established authority teaches that a criminal defendant, by his own actions, may make otherwise constitutionally inadmissible evidence admissible for certain purposes. *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In *United States v. Fairchild*, 505 F.2d 1378, 1383 (5th Cir. 1975), the defendant's *Miranda* silence, testified to by a rebuttal witness for the government, was held admissible for the purpose of rebutting the impression which the defendant had attempted to create, that he had cooperated fully with the law enforcement authorities.

Finally, rebuttal testimony ordinarily is held improper when it goes into matters not already raised by the opposing party's testimony. *See United States v. Hodnett*, 537 F.2d 828, 829 (5th Cir. 1976).

35

Based on the foregoing, this court concludes that counsel's assistance did not fall below *Strickland*'s standard of reasonableness when he decided not to object to the rebuttal witness Shateeka Clincy.

6.   The petitioner also raises an ineffective assistance of trial counsel claim relating to the petitioner's belief that his attorney should have developed a defense using the testimony of bank teller, Shannon Kennedy, the testimony of Debroski Rushing, and another unnamed alibi witness.  This court already has addressed the matters relating to the proposed testimony of Kennedy and Rushing.

The petitioner does not identify the third witness;  he does not show that the third witness was available and willing to testify that the petitioner was elsewhere and could not have committed the bank robbery;  and he certainly does not show that his counsel was told about this third witness prior to trial.  Consequently, this issue is without merit.  *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001) (where defendant alleges error in failure to call an alibi witness but does not identify the witness or produce evidence that witness would testify favorably for him, no evidentiary hearing is necessary to reject the claim).

Therefore, this court finds no basis for finding ineffective assistance based on counsel's failure to call an unidentified alibi witness.

7.   The petitioner next faults counsel for not investigating the scene of the apartment where the petitioner was arrested.  The petitioner asserts that the parking space for this apartment was directly in front.  The maroon Buick was discovered by Officer Williams in the back of the apartment complex.  The petitioner asserts that the

maroon Buick was at least a 7 to 10 minute walk from the apartment where he was arrested.  The evidence presented at trial, however, refutes the petitioner's time frame for the amount of time it would take someone to run from the car to the apartment in question.

Moreover, the petitioner does not contest that the officers arrived at the apartment complex within five to ten minutes after the robbery.  He does not contest that no one entered or left the apartment from "a few minutes after the robbery" until he was found hiding in his girlfriend's closet in his underwear.  He also does not contest that the stolen money was found in the apartment unit in which he was hiding.

The possibility that counsel could have discovered exculpatory evidence from a view of the apartment complex under these circumstances is speculative at best.  The petitioner does not identify any evidence likely to have resulted in an acquittal.  Claims of failure to adequately investigate require more than generalities.  "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (emphasis added).  The evidence must have been made known to defense counsel by petitioner, and must have been specific, admissible, and significant in order for counsel's failure to investigate to be constitutionally deficient.  *Carter v. Johnson*, 131 F.3d 452, 465 (5th Cir.1997).  As stated earlier, "[r]ecognizing that in 'failure to investigate' cases the temptation to rely on hindsight is strong, the Supreme Court stated that 'strategic choices made after thorough investigation of law and facts

37

relevant to plausible options are virtually unchallengeable.' " *Drones*, 18 F.3d at 500 (quoting *Strickland*, 466 U.S. at 690).

Further, the additional information must be significant enough to alter the outcome of the trial. "In order to satisfy the prejudice prong of *Strickland*, [a defendant] must show 'more than the mere possibility of a different outcome.' [He] must present 'evidence of sufficient quality and force to raise a reasonable probability that,' had it been presented to the jury, the outcome would have been different." *Drones,* 218 F.3d at 504 (citations omitted). *See also Strickland*, 466 U.S. at 694 (holding that in order to show prejudice, defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Given all the evidence presented to prove the petitioner's guilt, there is simply no reasonable probability that the presentation of Kennedy, Rushing or any other witness mentioned by petitioner would have changed the outcome of his trial.

As such, petitioner's counsel's decision not to investigate the crime scene does not constitute ineffective assistance of counsel.

8.  After trial of this case, the petitioner made known that he would be bringing ineffective assistance claims against his counsel. Counsel moved to withdraw from representing the petitioner and this court granted the motion. The court appointed Dennis Joiner to represent the defendant at sentencing.

The petitioner claimed at his September 26, 2003, sentencing hearing that his criminal history was misrepresented in the pre-sentence report. The trial court

continued the sentencing hearing until October 3, 2003, to give Mr. Joiner time to research the petitioner's position.  When the hearing resumed, Mr. Joiner reported that his investigation found the pre-sentence report to be accurate.  Mr. Joiner passed along to the court the petitioner's request that he not be considered a career criminal offender, but candidly admitted that the law was contrary to this position.  While the petitioner contends that counsel offered ineffective assistance regarding the pre-sentencing report, he does not show how Joiner's determination was incorrect under the law.

Inasmuch as the Sentencing Guidelines and the law were properly applied to reach the sentence imposed on the defendant, this court finds that counsel's assistance at sentencing was not ineffective.

9.  Next, the petitioner asserts that appellate counsel, Julie Epps, offered ineffective assistance on appeal when she failed to address the "exigency" exception to the search warrant requirement.  Since this court's finding that exigent circumstances justified the search of Cherries Y. Odie's apartment, appellate counsel's failure to brief the issue would constitute ineffective assistance of counsel only if the petitioner could have prevailed on the "exigency" ground.

Trial court findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo. United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993). The evidence is viewed in the light most favorable to the prevailing party unless inconsistent with the district court's findings or clearly erroneous considering the evidence as a whole. *Id.*  "This court's standard of review for a motion to suppress

39

based on live testimony at a suppression hearing is to accept the trial court's factual findings unless clearly erroneous or influenced by an incorrect view of the law." *United States v. Piaget,* 915 F.2d 138, 139 (5th Cir. 1990). When reviewing a trial court's ruling, the Fifth Circuit will consider evidence from the trial and any evidence derived from a suppression hearing. *See United States v. Rico*, 51 F.3d 495, 504 (5th Cir. 1995).

This court held a hearing on the petitioner's motion to suppress the evidence recovered from the search of Cherries Odie's apartment. Odie testified that she returned to her apartment complex in a panic after the petitioner called her to say he was suspected of robbing a bank and that he saw police surrounding the apartment. The road to her building had been blocked by the police so she parked her car and began walking toward her building. She saw officers near her apartment and approached them. She overheard the apartment manager send someone from maintenance to get a key and told the officers that she had her key. She told the officers that "because of the phone call that I had received, I believed the person that they may have been looking for was probably in my apartment." She told them what the petitioner had told her during the telephone call. When the officers asked for her key, she gave it to them because she did not want anyone to get hurt. When asked, "at the time you gave the officer the keys, you didn't have any objections to the police entering your apartment?" Odie replied, "no."

Odie identified her signature on the written Consent To Search Form, but claimed not to remember signing it. The officer in charge of the scene testified that

40

when he received word that Odie had arrived and was waiting in a patrol car he went

and asked her for her apartment key and for consent to search her apartment.  He

testified that she gave both.

At the conclusion of the suppression hearing, this court found that the search of

the apartment without a warrant did not violate the Fourth Amendment because it was

justified under both the "hot pursuit" and the consent exceptions to the warrant

requirement.  Specifically, the court ruled:

> The first exception is that of exigent circumstances under "hot
> pursuit."  The law on hot pursuit generally maintains that
> where the police are hot on the trail of an individual and
> where there is not time to gain a search warrant so as to
> thwart the escape of that individual, then the police need not
> obtain a search warrant.

> This court is satisfied that the circumstances here present
> that circumstance, present that portrait, and that this qualifies
> under hot pursuit.  The owner of the apartment told the police
> that she thought that the defendant was in her apartment.
> The police were there on the scene.  They couldn't take a
> chance that he would have some avenue of escape.  And to
> stand by and wait for someone to locate a magistrate and
> obtain a search warrant would necessarily take up an amount
> of time during which time this defendant either could have
> made his escape, or, since the police recognized that he may
> be armed that he could wreak some havoc with a weapon.

> Accordingly, this court is unpersuaded that the search is
> justified here under hot pursuit.

This court found that the officers plainly were in hot pursuit of an armed and

dangerous suspect at the time they searched Odie's apartment.  Those exigent

circumstances justified searching the apartment without first obtaining a warrant.

41

Exigent circumstances "include those in which officers reasonably fear for their safety, where firearms are present, where there is a risk of a criminal suspect's escaping, or fear of destruction of evidence." *United States v. Rico*, 51 F.3d 495, 501 (5th Cir. 1995). All these circumstances were present in the instant case, making any challenge on appeal of the officers' search of Odie's apartment extremely difficult to justify. "Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim." *Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990), *cert. denied*, 498 U.S. 1033 (1991). *Accord Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("failure to raise meritless objections is not ineffective lawyering;  it is the very opposite.").

Therefore, this court concludes that appellate counsel's failure to raise this court's exigent circumstances ruling on appeal does not constitute ineffective assistance, particularly where the likelihood of its success was so minimal.

10.  The petitioner claims that appellate counsel offered ineffective assistance by failing to raise ineffective assistance of counsel claims on direct appeal. At the time of the petitioner's direct appeal, his ineffective assistance claims had not been fully developed.   The Fifth Circuit usually does not review claims of ineffective assistance of counsel on direct appeal because the record is rarely sufficiently developed to enable appellate review. *United States v. Cochran*, 302 F.3d 279, 285 (5th Cir. 2002); *see also United States v. Scott*, 159 F.3d 916, 924 (5th Cir. 1998) ("We will only determine the merits of the claim on direct appeal when the record is sufficiently developed.").

In the instant case, the Fifth Circuit declined to consider the defendant's ineffective assistance of counsel claim on direct appeal because the record was not fully developed, not because of ineffectiveness on the part of appellate counsel.

11.  Finally, the petitioner claims cumulative prejudice from counsel's errors. Where no individual error is found, there can be no cumulative prejudice justifying habeas relief.  *See United States v. McCarty*, 36 F.3d 1349, 1360 (5 Cir. 1994) ("Having found no error, we accordingly find no merit to McCarty's contention that these rulings constitute cumulative error.").  This claim is without merit.

### **CONCLUSION**

Therefore, petitioner's motion to vacate judgment and/or to grant habeas corpus relief by modifying his sentence, which is filed pursuant to Title 28 U.S.C. § 2255, is not well-taken, and, for all the reasons above-stated, is denied.

**SO ORDERED**, this the 28th day of February, 2007.

s/ HENRY T. WINGATE
CHIEF UNITED STATES DISTRICT JUDGE

CRIMINAL NO. 3:03-CR-68-WS
CIVIL ACTION NO. 3:05-CV-784-WS
Order